[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS ANDSUBSTITUTED MOTION TO DISMISS
On January 2, 1996, the plaintiff, Fred Farkas, filed a two-count complaint against the defendants, Ellison Berns, M.D., Neal Lippman, M.D., and William Martinez, M.D. In his complaint, Farkas alleges the following: On or about December 22, 1994, Farkas was under the care of the defendants Berns and Lippman at St. Francis Hospital in Hartford, Connecticut where he underwent an emergency coronary artery bypass. Complaint, Count One CT Page 4512 paragraphs 1 and 4. The defendants Berns and Lippman were both employed by the University Physicians at the University Connecticut Health Center. Id., paragraph 3. Based on the electro physiological studies and diagnoses made by the defendants, Farkas again underwent surgery on January 3, 1995 to have a defibrillator placed in his chest. Id., paragraphs 7, 8 and 9.
On or about April or May of 1996, Farkas began experiencing pain and, after seeing other physicians, Farkas learned that the defibrillator implanted by the defendants was too large. Farkas then underwent surgery to replace the defibrillator implanted by the defendants with a smaller one. Id., paragraph 12.
On December 26, 1996, Deputy Sheriff Frederick E. Dinardi left copies of the writ, summons and complaint for the defendant Berns at 29 Cobbs Road, West Hartford, Connecticut, which the sheriff's return describes as being defendant Berns' usual place of abode. (Sheriff's return dated December 26, 1996.) In an affidavit attached to the motion to dismiss, however, defendant Berns states that he never received process at his usual place of abode. See Defendants' Exhibit C, Berns' Affidavit paragraph 5. Also, counsel for the defendant Berns "represent[ed] that on the date the sheriff incorrectly left the summons and complaint at 29 Cobbs Road in West Hartford, Connecticut, Dr. Berns was living in Avon, Connecticut." (Reply to Plaintiff's Objection to Defendant's Motion to Dismiss.)
On February 5, 1997, the defendants Berns and Lippman jointly filed a motion to dismiss the complaint against them on the ground of sovereign immunity. Additionally, defendant Berns argues that the complaint against him should be dismissed on the ground of insufficient service of process. Along with their supporting memorandum of law, the defendants submitted affidavits by the defendants Berns and Lippman and a copy of the sheriff's writ. On February 21, 1997, Farkas filed an opposition to the defendants' motion to dismiss and, on March 6, 1997, the defendants filed a reply to Farkas' objection.
The Court denied the Motion without prejudice pending answers to certain questions being concerned with the knowledge or lack of knowledge of the status of the defendants by the plaintiff and the effect it might have on his rights and remedies.
The parties responded to the court's inquiries with supplemental memoranda and a substituted Motion to Dismiss. CT Page 4513
"The motion to dismiss shall be used to assert lack of jurisdiction over the subject matter . . . and insufficiency of service of process." Practice Book § 143. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially, asserting that the plaintiff cannot as a matter of law and fact state a course of action that should be heard by the court." (Internal quotation marks omitted.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991); Third Taxing District v.Lyons, 35 Conn. App. 795, 803, 647 A.2d 32, cert. denied,231 Conn. 936, 650 A.2d 173 (1994). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624,461 A.2d 991 (1983). When a court lacks subject matter jurisdiction, it shall dismiss the action. Practice Book § 145.
"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." Antinerella v. Rioux, 229 Conn. 479, 489,642 A.2d 699 (1994), quoting Amore v. Frankel, 228 Conn. 358,364, 636 A.2d 786 (1994), see also Dugay v. Hopkins,191 Conn. 222, 227, 464 A.2d 45 (1983); Lemoine v. McCann,40 Conn. App. 460, 468, A.2d (1996); Herzig v. Horrigan, 34 Conn. App. 816,820, 644 A.2d 360 (1994).
The defendants, Berns and Lippman, argue that the court lacks subject matter jurisdiction over them because they are state employees as defined under General Statutes § 4-141[1] and, thus, they are immune from suit for personal injury under General Statutes § 4-165.[2] See Golfin v. Simon, Superior Court, judicial district of Waterbury, Docket No. 90381 (July 3, 1990) (Kulawiz, J.) (1 CONN. L. RPTR. 816) (holding that a physician employed by the University of Connecticut Health Center is a state employee and therefore immune from suit for malpractice under General Statutes § 4-165); see also Sullivan v. State,189 Conn. 550, 554, 457 A.2d 304 (1983) (noting that state employees acting within the scope of their employment are immune from personal liability for injury not wantonly or willfully caused in the performance of their duties). Farkas counters that, even though the defendants were employed by the University of Connecticut Health Center, they are not entitled to immunity under the statute because the negligent acts complained of allegedly occurred at St. Francis Hospital, which is not a state institution. CT Page 4514
In response to plaintiff's argument, the defendants argue that, even though the acts complained of occurred in a private facility, the defendants are entitled to the immunity afforded by General Statutes § 4-165 because they were discharging their duties in the course of their state employment. See Exhibit A., Affidavit of Berns paragraph 5 (stating that "[a]ny and all services allegedly provided by me to Fred Farkas were provided through my capacity as Director, Clinical Electro physiology at the University of Connecticut Health Center while employed by the State of Connecticut."); Exhibit B, Affidavit of Lippman paragraph 5 (stating that "[a]ny and all services allegedly provided by me to Fred Farkas were provided through my capacity as Attending Electro physiologist, were provided through my capacity as Attending Electro physiologist, at the University of Connecticut Health Center while employed by the State of Connecticut").
Farkas argues that state employed physicians are entitled to immunity under General Statutes § 4-165 only when discharging their duties in a state facility or when discharging their duties at a non-state facility as part of a medical rotation program. In support of this argument, Farkas relies on the following cases.Domejczyk v. Jaskey, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 438944 (June 18, 1991, Goldberg, J.) (4 CONN. L. RPTR. 633, 6 CSCR 680) (holding that a state employed resident physician who was performing his duties at the New Britain General Hospital was entitled to the immunity afforded by General Statutes § 4-165); Russell v. Universityof Connecticut Health Center, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 426139 (April 7, 1989, Kremski, J.) (4 CSCR 383) (holding that a state employed physician working at a state facility is entitled to the immunity afforded by General Statutes § 4-165); Gonzales v.Hartford Hospital, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 315166 (December 6, 1988, Aronson, J.) (4 CSCR 81) (holding that a state employed intern physician who was performing his duties at the Hartford Hospital as part of a medical rotation program was entitled to the immunity afforded by General Statutes program was entitled to the immunity afforded by General Statutes § 4-165). Farkas argues that the court should construe these cases as limiting the immunity afforded by General Statutes § 4-165 to state employed physicians while performing their duties in a state facility or in a non-state facility as part of a medical rotation CT Page 4515 program. In response, the defendants refer to Becker v. Serafini,
Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 246289 (February 28, 1981, Borden, J.),[3]
a decision upon which the courts in Russell v. University ofConnecticut Health Center, supra, 4 CSCR 383, and Gonzales v.Hartford Hospital, supra, 4 CSCR 81, rely. In Becker v.Serafini, supra, the court held that the defendant doctor, an independent contractor who agreed to provide medical services to the inmates at the Hartford Community Correctional Center, was entitled to the immunity afforded by General Statutes § 4-165. See Gonzales v. Hartford Hospital, supra, 4 CSCR 81
(describing the decision in Becker v. Serafini, supra). In their reply memorandum, the defendants argue that the plaintiff's distinction is meaningless because the Hartford Community Correctional Center was not a state agency and yet the court inBecker v. Serafini granted sovereign immunity to the defendant doctor. However, contrary to the defendants' representations, the Hartford Community Correctional Center is a state facility. See General Statutes § 18-78; General Statutes § 1-1 (w).
Despite the fact that all of the defendant doctors in the cases relied on by Farkas happened to be discharging their duties either in a state facility or as part of a medical rotation program, these cases contain no language requiring the defendant doctors to discharge their duties in this manner to be afforded the immunity of General Statutes § 4-165. Therefore, under General Statutes § 4-165, the defendants in this case are immune from suite and, thus, the court lacks subject matter jurisdiction over these defendants.[4] Accordingly, the court grants the defendants' substituted motion to dismiss the complaint but only as against defendants Berns and Lippman.
Because the court is dismissing Farkas' complaint against defendants Berns and Lippman for lack of subject matter jurisdiction, the court need not address defendants Berns' service of process issue.
HALE, J.