[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS (#101)
I. Factual and Procedural Background
The plaintiff, Anthony R. Martin, filed suit on September 20, 1999, against the defendants, Trooper James Brady, Trooper Andre Joyner, Trooper Thomas Inglis, and Detective Jeff Correia, all of the CT Page 4890 Connecticut State Police ("the defendants") alleging that they deprived him of his right to be free from unreasonable searches and seizures of his person and property and to be free from a denial of procedural and substantive due process of law, which rights are secured by the due process guarantees of the Connecticut Constitution.[1] Martin seeks money damages.
The relevant facts with respect to the search and seizure claim are as follows: Martin alleges that his primary residence and state of citizenship is in Florida. He alleges that he was born in Middletown, Connecticut, and retains a home there. Martin contends that in August, 1998, he was released from custody in Florida for a criminal matter, and openly and legally came to Connecticut. He alleges that he came to Middletown, Connecticut, to defend a foreclosure lawsuit, and to attend to other pending legal matters. He contends that Florida authorities declared him a fugitive, and in September, 1998, began efforts to extradite him.
Martin alleges three events as grounds for his constitutional search and seizure claim. First, Martin alleges that on October 6, 1998, Inglis and certain unknown Middletown police officers forced their way into his home in Middletown without a search warrant, and in the absence of any circumstances that would justify proceeding without a warrant. He alleges that at this time, he was arrested. He contends that he made appearances in court for the charges filed, and in January, 1999, the charges against him were dismissed. Second, Martin alleges that on or about April, 19, 1999, Brady and Joyner obtained a search warrant that led to a search of his Middletown residence by executing a sworn affidavit containing false claims. Third, Martin alleges that subsequently, one or more of the defendants, and possibly others acting in concert with them, broke into his Middletown house, smashed windows, and broke down doors in an unsuccessful effort to locate and/or arrest him. Martin claims that in the manner described above, the defendants deprived him of his right to be free from unreasonable searches and seizures of his person and property. He claims that as a result, he suffered economic loss and requests money damages.
On October 15, 1999, the defendants filed a motion to dismiss, and supporting memorandum, pursuant to Practice Book § 10-31(1) arguing that this suit should be dismissed because the court lacks jurisdiction over the subject matter. Specifically, the defendants argue that the action against them is barred by the doctrine of sovereign immunity and Martin failed to exhaust his administrative remedies. In response, Martin filed a memorandum in opposition. CT Page 4891
For the reasons discussed below, the defendants' motion to dismiss is granted.
II. Standard of Review
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.)Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "The motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter." (Internal quotation marks omitted.) Practice Book § 10-31(1). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991
(1983). "The motion to dismiss . . . admits all facts which are well pleaded." Barde v. Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000
(1988). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Federal Deposit Ins.Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996). See also Novicki v. New Haven, 47 Conn. App. 734, 739, 709 A.2d 2
(1998). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner favorable to the pleader."Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998).
III. Discussion
The defendants argue that Martin attempts to circumvent the bar provided by sovereign immunity by suing the defendant state officers in their individual capacities. They argue that Martin has made no allegations that will take his suit outside of the bar provided by sovereign immunity, and that he failed to exhaust his administrative remedies which require that he first bring his claim, as a claim against the state, to the Claims Commissioner.
In response, Martin argues that there is no basis for the defendants' sovereign immunity claim because he is suing the defendant state officers in their individual capacities for alleged constitutional violations of Article First, Section 7, of the Connecticut Constitution. He argues that his claim is excepted from the Claims Commissioner under the authority of Binette v. Sabo, CT Page 4892244 Conn. 23, 710 A.2d 688 (1998), and therefore, he may bring this suit directly before this court.
"We have long recognized the common-law principle that the state cannot be sued without its consent." Sentner v. Board of Trustees,184 Conn. 339, 342, 439 A.2d 1033 (1981); Horton v. Meskill,172 Conn. 615, 623, 376 A.2d 355 (1977); Textron, Inc. v. Wood,167 Conn. 334, 339, 355 A.2d 307 (1974). Also, "[w]e have . . . recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Internal quotation marks omitted.) Sentner v. Board of Trustees, supra,184 Conn. 342. "In the absence of legislative authority . . . we have declined to permit any monetary award against the state or its officials. The claims for damages brought against . . . [state officers] are, in effect, actions against the state as a sovereign and are, therefore, barred by the doctrine of sovereign immunity." (Citations omitted; internal quotation marks omitted.) Doe v. Heintz,204 Conn. 17, 32, 526 A.2d 1318 (1987). However, this court also recognizes that "[t]his absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others." Doe v.Heintz, supra, 204 Conn. 31. "When the state waives that immunity by statute . . . a party attempting to sue under the legislative exception must come clearly within its provisions, because statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . ." Federal Deposit Ins. Corp. v. Peabody, N.E., Inc.,239 Conn. 93, 101-102, 680 A.2d 1321 (1996).
With respect to constitutional claims, the courts have stated that, "[i]n a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts." Sentner v. Board of Trustees, supra, 184 Conn. 343. Sovereign immunity "does not bar suits against state officials acting . . . in violation of constitutional rights." (Citations omitted; internal quotation marks omitted.) Horton v. Meskill, supra, 172 Conn. 624. "[T]he government cannot justifiably claim interference with its functions when the acts complained of are unconstitutional or unauthorized by statute. On the other hand, where no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." Id. "The allegations of such a complaint and the factual underpinnings if placed in issue, must CT Page 4893 clearly demonstrate an incursion upon constitutionally protected interests." Barde v. Board of Trustees, 207 Conn. 59, 64,539 A.2d 1000 (1988). See, e.g., Upson v. State, 190 Conn. 622, 625,461 A.2d 991 (1983); Horak v. State, 171 Conn. 257, 261,368 A.2d 155 (1976).
In addition, "[i]t is a cardinal principle of judicial review that when an adequate administrative remedy is provided by law, it should be exhausted." (Internal quotation marks omitted.) State v. Sullivan,189 Conn. 550, 553, 457 A.2d 304 (1983). See Doe v. Heintz, supra,204 Conn. 34. "Claims of constitutional violations are no exception to this general rule." State v. Sullivan, supra, 189 Conn. 554. SeeDoe v. Heintz, supra, 204 Conn. 34. "Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Citations omitted.) Drumm v. Brown, 245 Conn. 657, 716 A.2d 50 (1998).
With respect to alleged constitutional violations, "[a]pplication of this principle, however, is limited to those situations where the pursuit of administrative remedies is not necessarily futile." Statev. Sullivan, supra, 189 Conn. 554. See Doe v. Heintz, supra,204 Conn. 34. "Direct adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore. [W]e continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy." Polymer Resources, Ltd. v. Keeney, 227 Conn. 545, 563,630 A.2d 1304 (1993). "No determination of whether a constitutional necessity exists that would supersede the state's sovereign immunity can be made when the alternative procedure available through the claims commissioner, which might have provided the relief sought, has been ignored." Doe v. Heintz, supra, 204 Conn. 37. "[W]e must . . . determine whether [the plaintiff has] bypassed an administrative remedy, because exhaustion of such an alternative means of relief is a prerequisite to our jurisdiction to consider their constitutional claim." Id., 34.
Martin filed suit with this court alleging that the defendant state officers were "acting under color of law" and that they are being sued in their "individual capacities for constitutional violations." See Complaint, para. 8-11. However, in order for Martin to bring suit CT Page 4894 here, he first must show that he has complied with the procedures proscribed by Chapter 53 of the General Statutes, §§ 4-141 et seq. These statutes provide the appropriate procedure for bringing a claim against state officers. Section 4-165 provides that, "[n] o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." "Section4-165 continues, however, any person having a complaint for such . . . injury shall present it as a claim against the state under the provisions of this chapter. In McKinley [v. Musshorn, 185 Conn. 616,621, 441 A.2d 600 (1981)] we indicated the availability of this administrative remedy when we stated: An individual having a liability claim for which a state employee is immune pursuant to General Statutes 4-165 may present it as a claim against the state to the claims commissioner. The state claims commissioner is charged with the duty to hear and determine all petitions for the payment or refund of money from the state or for permission to sue the state." (Internal quotation marks omitted.) State v. Sullivan, supra,189 Conn. 554-55. Sections 4-141 and 4-142 require that a claim petition, for permission to sue the state, must be presented to the Claims Commissioner, who shall hear and determine all claims against the state except certain excepted claims. Sections 4-147 provides the procedure for filing a claim, and 4-160 provides the Claims Commissioner with authority to authorize suit against the state when he deems it just and equitable. Here, Martin is required to establish that he complied with the procedures outlined above, absent a showing that his claim falls within an exception to this procedure, or that the remedy provided by the statutes is futile.
Martin alleges that the defendant state officers were "acting under color of law" and that they are being sued in their "individual capacities." By making these allegations, Martin is alleging that the defendants here were acting under their authority as state officers and are personally liable for their acts. "[I]n order for unlawful acts of an official to be done `under color of law', the unlawful acts must be done while such official is purporting or pretending to act in the performance of his official duties." Black's Law Dictionary (6th Ed. 1990). However, the general rule with respect to bringing suit against state officers provides that "because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Internal quotation marks omitted.) Sentner v. Board of Trustees, supra, 184 Conn. 342. "The CT Page 4895 claims for damages brought against . . . [state officers] are, in effect, actions against the state as a sovereign and are, therefore, barred by the doctrine of sovereign immunity." (Citations omitted; internal quotation marks omitted.) Doe v. Heintz, supra,204 Conn. 32. Therefore, in order to sue the defendant state officers for constitutional violations, Martin must allege, and state facts, that they were acting in excess of their statutory authority; "where no substantial claim is made that the defendant officer is acting . . . in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction" Horton v. Meskill, supra, 172 Conn. 624, or that his suit falls within an exception to immunity, General Statutes § 4-165; "[w]hen the state waives that immunity by statute . . . a party attempting to sue under the legislative exception must come clearly within its provisions, because statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed." FederalDeposit Ins. Corp. v. Peabody, N.E., Inc., supra, 239 Conn. 101-102.
When determining whether a complaint alleges facts sufficient to establish subject matter jurisdiction, two principles provide guidance. First, "[a] reviewing court should indulge every presumption in favor of the trial court's subject matter jurisdiction." Miko v. Commissioner on Human Rights Opportunities,220 Conn. 192, 198, 596 A.2d 396 (1991). Second, the court must view "the factual allegations of the complaint in the light most favorable to the plaintiff" Tamm v. Burns, 222 Conn. 280, 285
n. 3, 610 A.2d 590 (1992). "Because this case comes to us on a threshold sovereign immunity issue, pursuant to a motion to dismiss . . . we do not pass on whether the complaint was legally sufficient to state a cause of action. In the posture of this case, we examine the pleadings to decide if the plaintiff has alleged sufficient facts: (1) with respect to sovereign immunity, to support a conclusion that the defendant acted in excess of his statutory authority; and (2) with respect to personal immunity under 4-165, to support a conclusion that the defendant was acting outside the scope of his employment or wilfully or maliciously." (Citations omitted.)Antinerella v. Rioux, 229 Conn. 479, 489, 642 A.2d 699 (1994). In doing so, the court finds that Martin does not allege any facts that support a claim that the defendant state officers were acting in excess of their statutory authority or that the defendant state officers conduct comes within the provisions of General Statutes §4-165 which provides exceptions to immunity.
Martin makes no claims that he has complied with the above outlined CT Page 4896 procedures. Instead, Martin argues that his claim falls within an exception to this procedure. He contends that his suit is authorized under Article First, Section 7, of the Connecticut Constitution byBinette v. Sabo, 244 Conn. 23, 710 A.2d 688 (1998). Martin admits that he failed to present his claim, as a claim against the state, to the Claims Commissioner. He argues that his claim is excepted under General Statutes § 4-142 (2) which provides that certain claims shall not be heard by the Claims Commissioner: "claims upon which suit otherwise is authorized by law including suits to recover similar relief arising from the same set of facts." Martin contends that §4-142 (2) applies here arguing that this suit is authorized under Article First, Section 7, of the Connecticut Constitution by Binettev. Sabo, supra, 244 Conn. 23. Therefore, he argues that the state Claims Commissioner has no jurisdiction to hear this suit.
Binette v. Sabo involved a suit for damages brought against municipal police officers alleging, among other claims, violation of Article First, Section 7, of the Connecticut Constitution. Binette v.Sabo, supra, 244 Conn. 26-27. Binette recognized a private constitutional tort cause of action for money damages under ArticleFirst, Section 7, of the Connecticut Constitution. Id., 28. However,Binette is factually distinguishable from Martin's case. In Binette, the court was never required to address sovereign immunity and General Statutes § 4-165 because the suit was against municipal
police officers, to whom these protections do not apply. Id., 26-27. The present suit is against state police officers. Martin relies solely on Binette v. Sabo as authority for his suit before this court. See Martin's Memorandum in Opposition to Motion to Dismiss.
This court is only aware of one other court interpreting Binette in a suit brought against state police officers. Mitchell v. Thompson, Superior Court, judicial district of Hartford at Hartford, Docket No. 582263 (April 30, 1999, Wagner, J.) (24 Conn.L.Rptr. 538). The court in Mitchell granted the defendant state officer's motion to dismiss based on sovereign immunity and failure to exhaust administrative remedies on the ground that the court lacked jurisdiction to hear the matter. Id. The court specifically declined to apply Binette, as relied on by the plaintiff, distinguishing it on the grounds that sovereign immunity and General Statutes § 4-165 were not at issue in Binette because the suit was against municipal police officers. Id. This court is persuaded by analogy with the court inMitchell in which it reasoned, "[w]hile Binette v. Sabo purportedly establishes an independent, private constitutional cause of action for money damages, neither the opinion or plaintiffs' argument addresses the question whether the doctrine of sovereign immunity CT Page 4897 shields the defendant from such liability or whether the plaintiffs must first have filed a claim for damages with the claims commissioner under General Statutes §§ 4-141 et seq. Indeed, Binettev. Sabo involved a suit against municipal police officers, to whom the protections of sovereign immunity and General Statutes § 4-165 do not apply." Id. The Mitchell court further stated, "[s]ince plaintiff has failed to allege, and it does not appear, that permission to sue has been granted by the Claims Commissioner, this court has no jurisdiction to consider this monetary claim against state officers." Id. Likewise, this court has no jurisdiction to consider Martin's claim in this action.
Accordingly, Martin is required to comply with the requirements outlined above in General Statutes §§ 4-141 et seq. "[A] claimant falling outside the exceptions of § 4-142 must bring a claim before commencing an action. That claim is not a demand, a suit or an action in a court of justice but, rather, is a petition seeking permission to proceed with an action against the state in a court of justice."Capers v. Lee, 239 Conn. 265, 272, 684 A.2d 696 (1996). There is no evidence for this court to conclude that recourse to the Claims Commissioner would have resulted in an inadequate remedy. "Since we are not aware of any legal barrier to the presentation of the plaintiffs claim to the commissioner or to his favorable action upon it, we cannot assume that recourse to that procedure would necessarily have been futile or inadequate. The failure of the plaintiffs to pursue this administrative remedy precludes an adjudication of the constitutional claim they have raised. No determination of whether a constitutional necessity exists that would supersede the state's sovereign immunity can be made when the alternative procedure available through the claims commissioner, which might have provided the relief sought, has been ignored. [B]ecause exhaustion of such an alternative means of relief is a prerequisite to our jurisdiction to consider [the] constitutional claim; we conclude that the trial court lacked jurisdiction and, therefore, properly granted the motion to dismiss." (Citations omitted; internal quotation marks omitted.) Barde v. Board ofTrustees, 207 Conn. 59, 66, 539 A.2d 1000 (1988). Because there is no evidence that the administrative remedy provided by statute is futile and Martin has failed to bring a claim against the state to the Claims Commissioner, and received permission to sue, this court lacks jurisdiction to hear this suit.
IV. Conclusion
For the foregoing reasons, the court grants the defendants' motion to CT Page 4898 dismiss. It is so ordered.
By the court
 Rogers, J.